IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MATTHEW GODSEY, et al., on
behalf of themselves and others
similarly situated

    Plaintiffs,

v.

AIRSTREAM, INC.,

    Defendant.

:

:

:

:

Case No. 3:19-cv-107

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING PLAINTIFFS' PRE-DISCOVERY
MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-
SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS
PURSUANT TO 29 U.S.C. § 216(b) (DOC. #15); COUNSEL TO
CONFER ABOUT MODIFICATIONS TO PROPOSED NOTICE AND
FILE JOINT AMENDED PROPOSED NOTICE WITHIN TEN DAYS

---

Plaintiffs Matthew Godsey, Josh Wagler, and Jasson Dunaway filed this collective action against Airstream, Inc., alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111.03 and 4111.08, and the Ohio Prompt Pay Act, O.R.C. § 4113.15 (the "Ohio Wage Acts").

This matter is currently before the Court on Plaintiffs' Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). Doc. #15. Airstream opposes that motion for several reasons.

I. **Background and Procedural History**

The three Named Plaintiffs, all former employees of Airstream, generally allege that, in calculating overtime pay, Airstream failed to properly calculate regular rates of pay to include certain nondiscretionary weekly attendance and bonuses and monthly production bonuses. These same claims were the subject of a previous opt-in collective action, *Funk v. Airstream, Inc.*, 3:17-cv-260. However, none of the Named Plaintiffs joined in that lawsuit, or otherwise participated in it. On behalf of themselves and others who are similarly situated, Plaintiffs seek to recover unpaid overtime wages through: (1) an opt-in collective action under the FLSA, 29 U.S.C. § 216(b); and (2) a class action alleging violations of the Ohio Wage Acts.

Plaintiffs have filed a Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216(b), Doc. #15. The proposed FLSA Collective Class is defined as:

> All current and former hourly, non-exempt employees of Airstream who (1) received additional forms of remuneration with their base hourly rate of pay during any workweek that they worked over 40 hours in any workweek beginning three years preceding the filing date of this Complaint and continuing through the date of final disposition of this case; and (2) did not opt[-]in to or join the FLSA Collective in *Funk v. Airstream, Inc., et al.*, from April 29, 2015[1] to the present.

---

[1] Although this date lies beyond the FLSA's three-year statute of limitations for willful violations, 29 U.S.C. § 255(a), Plaintiffs plan to later argue that Airstream's interference justifies equitable tolling. In the event the Court agrees that equitable tolling is warranted, this date would incorporate all who may have a viable claim.

2

In addition to asking for conditional class certification, Plaintiffs also ask the Court to: (1) approve the Court-Supervised Notice and Consent Form to the Putative Class Members; (2) approve a 90-day Reminder Notice to be sent to Putative Class Members halfway through the 90-day opt-in period; and (3) order Defendants to identify all potential opt-in plaintiffs within 14 days of the entry of this Order.

## II. Analysis

### A. Conditional Certification

#### 1. Relevant Law

The FLSA requires covered employers to pay non-exempt employees not less than minimum wage for each hour worked, and one and one-half times the employee's "regular rate" of pay for each hour worked in excess of forty hours per week. 29 U.S.C. §§ 206-207. Employers who violate these provisions are liable for the unpaid wages, plus an additional amount as liquidated damages, reasonable attorneys' fees and costs. 29 U.S.C. § 216(b).

Under the FLSA, a collective action may be filed by one or more employees on behalf of themselves and other "similarly situated" employees. *Id.* However, unlike a typical class action lawsuit, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

3

The certification process in an FLSA collective action typically proceeds in two phases. Because the statute of limitations on an FLSA claim continues to run until written consent is filed with the court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).

Before authorizing the plaintiffs to send the notice, however, the court must first determine whether they have shown "that the employees to be notified are, in fact 'similarly situated.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Because this determination is generally made before discovery is conducted, plaintiffs need make only a "modest showing" at this initial stage of the litigation. *Lewis*, 789 F. Supp. 2d at 867. Employees are considered to be "similarly situated" if their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Id.* at 868. The Sixth Circuit has held that employees are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

As the court noted in *Comer*, application of this "fairly lenient standard . . . typically results in conditional certification." 454 F.3d at 547. Factors to be considered include: "whether potential plaintiffs were identified; whether affidavits

4

of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis*, 789 F. Supp. 2d at 868 (quotations and citations omitted). At this stage, the Court does not typically consider the merits of the plaintiffs' claims, and individualized issues will not typically preclude class certification. *O'Brien*, 575 F.3d at 584-85. Once a court determines that the potential opt-in plaintiffs are "similarly situated" to the named plaintiffs, notice is sent, opt-in forms are filed and discovery takes place.

At the second stage of the certification process, the defendant may file a motion to decertify the class. At that point, the court revisits, with greater scrutiny, the question of whether the class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

  **2. Discussion**

Plaintiffs maintain that the Putative Class Members are similarly situated because they: (1) worked for the same enterprise; (2) performed job duties integral and indispensable to Airstream; and (3) were subject to the same conduct that deprived the Named Plaintiffs of overtime wages for all hours worked in excess of 40 during workweeks when they received additional forms of remuneration.

In support of their Motion for Conditional Class Certification, Named Plaintiffs Godsey and Wagler have submitted their own declarations, Docs. ##15-1, 15-2, stating that, during the time in question, Airstream did not include discretionary bonuses in the regular rate of pay for any of its hourly employees. In

5

addition, in their deposition in the *Funk* case, Airstream's 30(b)(6) designees Jeannie Lloyd and Mark Leksan each admitted that this was the company's standard procedure at the time. Doc. #11, PageID##129-30; Doc. #12, PageID#416.

Airstream notes that Plaintiffs' Motion for Conditional Class Certification is not really a "pre-discovery" motion, given that the claims are largely identical to those raised in the *Funk* lawsuit in which the parties conducted extensive discovery. It therefore argues that Plaintiffs must make more than a "modest showing" that they are similarly situated to the putative class members. Airstream urges the Court to use a "modest plus" standard, which "requires an elevated factual showing, something beyond what is alleged in the pleadings and otherwise advancing the ball down the field beyond the pleadings." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 895 (S.D. Ohio 2018).

The Court agrees that, under the circumstances presented here, the "modest plus" standard applies. Under this standard, the Court may consider evidence from all parties. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 766 (N.D. Ohio 2015). Even under this slightly elevated standard, Plaintiffs have satisfied their burden of proving that they, like the putative class members, "suffer from a single, FLSA-violating policy" and that "proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 584.

Airstream maintains that the Named Plaintiffs are not similarly situated to the Putative Class Members because evidence shows that the Named Plaintiffs have already been compensated for the back overtime allegedly owed them for the three-year period leading up to the filing of this suit. Airstream discovered the payroll error in 2017, and, in early 2018, issued checks to employees and former employees, including the Named Plaintiffs, for back overtime owed from January of 2016 through March of 2018. Doc. #17-1. PageID##673-87. The Named Plaintiffs, however, seek to represent a class of individuals who were *not* properly compensated for overtime.

Airstream mischaracterizes Plaintiffs' claim. Plaintiffs allege that, despite the checks that were issued, Airstream still has not paid them or the Putative Class Members all that may be owed. For example, Airstream calculated unpaid overtime damages for two years instead of three because it did not believe that the violation was willful. In addition, Airstream did not pay the employees an equal amount of liquidated damages, which may be awarded under 29 U.S.C. § 216(b) for violations of the FLSA. Doc. #11, PageID##145-46. Plaintiffs also challenge the manner in which Airstream recalculated each employee's regular rate of pay with respect to the production bonuses.

Based on the foregoing, the Court concludes that the Putative Class Members are similarly situated to the Named Plaintiffs, in that none has received all of the relief to which they may be entitled under the FLSA. The Court therefore

SUSTAINS Plaintiffs' Motion for Conditional Class Certification under the FLSA, 29 U.S.C. § 216(b).

## III. Court-Supervised Notice and Consent Form

Plaintiffs ask the Court to approve the proposed Court-Supervised Notice, Doc. #15-3, and Consent Form, Doc. #15-4, to be sent via regular mail and email to all potential § 216(b) Class Members. Plaintiffs also ask the Court to approve a Reminder Notice, Doc. #15-5, to be sent via email to all potential § 216(b) Class Members halfway through the 90-day opt-in period.

### A. Initial Notice and Consent Form

Airstream raises several objections to the proposed Notice of Unpaid Overtime Wages Lawsuit, Doc. #15-3.

#### 1. Substantive Objections

Airstream first objects to inclusion of the following statement: "If Airstream communicated to you that you have been fully paid all that you are entitled to or otherwise made you feel that you are unable to join this Case or any lawsuit against it without retaliation, ***you should disregard such communications***." Doc. #15-3, PageID#653 (emphasis in original).

Airstream maintains that this statement improperly discourages potential opt-in plaintiffs from considering the impact of payments previously made to them, and falsely gives the impression that the Court has found those previous communications to be inappropriate. Plaintiffs maintain that this statement is

8

proper, given Airstream's prior misleading communications concerning the prior payments and the alleged fear of retaliation that resulted in such a low opt-in rate in the *Funk* lawsuit.

The Court agrees with Airstream that the statement at issue must be modified. In deciding whether to opt-in, putative plaintiffs should not be asked to completely disregard communications concerning the prior payments they received for back overtime pay. The Court directs counsel to confer and agree on a proper modification of this statement.[2]

Airstream next argues that Plaintiffs' failure to inform the opt-in plaintiffs of their potential liability for costs associated with this litigation deprives those individuals of the opportunity to make an informed decision about whether to join the lawsuit. The Court agrees that this information should be included in the Notice. For example, in *Funk*, the approved Notice contained the following statement: "Plaintiffs, including those who opt-in to the lawsuit, will remain responsible for paying their expenses of the litigation, and may also be held liable for Airstream's costs of the litigation if Airstream prevails." *Funk v. Airstream*, Case No. 3:17-cv-260, Doc. #39, PageID#354. Again, the Court directs counsel to confer and agree on appropriate language.

---

[2] The Court suggests that the parties consider the statement contained in the Notice of Collective Action Lawsuit approved by the Court in *Funk*, 3:17-cv-260, Doc. #40, PageID#359.

Within ten calendar days of the date of this Decision and Entry, counsel shall confer to resolve these two issues and file a Joint Amended Proposed Notice of Unpaid Overtime Wages Lawsuit. The Court will then review the proposed amendments and establish dates for the opt-in period.

### 2. Procedural Objections

Airstream also objects to Plaintiffs' request to send the Notice and the Consent-to-Join form to the potential opt-in plaintiffs via email. Airstream has not issued work email addresses to the putative opt-in plaintiffs and does not collect personal email addresses as part of their contact information.

In most cases, the Court does not hesitate to allow plaintiffs to send class notices via regular mail and email. However, in cases like this, where the employer has not issued work email addresses to its employees and does not typically collect employees' personal email addresses, notice via email is not always practicable. In *Funk*, the Court ordered Airstream to collect the employees' personal email addresses and provide them to Plaintiffs' counsel. Airstream's attempts to do so, however, were largely unsuccessful because most employees indicated that they did not want to be contacted via their personal email addresses about the pending litigation.

In the Court's view, under the circumstances presented here, asking Airstream to make another attempt to collect personal email addresses for a second collective action involving the same claims raised in *Funk* would be

improper and the Court refuses to do so. Accordingly, Plaintiffs may send the Notice and Consent-to-Join forms via regular U.S. mail, but not via email.

### B. Reminder Notice

Airstream also objects to Plaintiffs' request that they be permitted to send potential opt-in plaintiffs a Reminder Notice approximately halfway through the 90-day opt-in period. It argues that this will unnecessarily stir up litigation and improperly suggest the Court's endorsement of Plaintiffs' claims. As Plaintiffs note, however, Airstream's arguments are largely belied by the fact that, after the Reminder Notice was sent in *Funk*, no additional putative class members opted in.

The Court will allow Plaintiffs to send a Reminder Notice halfway through the 90-day opt-in period. Nevertheless, for the reasons explained above, any such Reminder Notice is to be sent via regular U.S. mail only.

## IV. Identification of Potential Opt-in Plaintiffs

Within 14 calendar days of the date of this Decision and Entry, Airstream shall produce a list, in electronic and importable format, of all potential putative 216(b) Class Members, including their names, positions of employment, last-known mailing addresses, last-known telephone numbers, work locations, and dates of employment. Airstream need not produce email addresses of the putative class members.

## V. Conclusion

For the reasons stated above, the Court SUSTAINS Plaintiffs' Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). Doc. #15. The Court, however, also SUSTAINS Airstream's substantive objections to the proposed Notice. Within ten calendar days of the date of this Decision and Entry, counsel shall confer to resolve these outstanding issues and file a Joint Amended Proposed Notice of Unpaid Overtime Wages Lawsuit for the Court's approval.

As set forth above, within 14 calendar days of this Decision and Entry, Airstream shall produce a list of all potential putative 216(b) Class Members, along with relevant contact information.

Date: January 31, 2020

WALTER H. RICE
UNITED STATES DISTRICT JUDGE