**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| Mark Satterly, Matthew Godsey, and Josh Wagler,<br><br>On behalf of themselves and other members of the general public similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Airstream, Inc.,<br>Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * | Case No. 3:19-cv-32<br><br>Judge Walter H. Rice |
| Matthew Godsey, Josh Wagler, & Jasson Dunaway,<br><br>On behalf of themselves and other members of the general public similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Airstream, Inc.,<br>Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * | Case No. 3:19-cv-107<br><br>Judge Walter H. Rice |

## ORDER GRANTING THE PARTIES' JOINT MOTION FOR FINAL APPROVAL

Before the Court are the Parties' Joint Motion for Final Approval of Class and Collective

Action Settlement and Certification of Settlement Class (ECF No. 133) and the oral arguments

presented by counsel at the fairness hearing on September 25, 2020. For the reasons stated below,

the Court grants the Parties' motion.

## I.   BACKGROUND OF THE LITIGATION

### A.   The *Satterly* Lawsuit (Case No. 3:19-cv-32) (hereinafter the "*Satterly* Lawsuit")

On January 31, 2019, Named Plaintiff Mark Satterly ("Named Plaintiff" or "Satterly"), on behalf of himself and those similarly situated, filed his Collective and Class Action Complaint against Airstream, Inc ("Defendant" or "Airstream") and alleged that Airstream failed to fully pay employees overtime wages seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.03, and 4111.08 ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"). (*See* ECF No. 1, PAGEID # 2-7) Thereafter, Named Plaintiffs Satterly, Matt Godsey ("Godsey"), and Josh Wagler ("Wagler") (collectively, the "*Satterly* Named Plaintiffs") filed their first amended collective and class action complaint on March 4, 2019. (*See* ECF No. 17) In addition to the *Satterly* Named Plaintiffs, 20 Opt-In Plaintiffs[1] elected to join the case ("Opt-In Plaintiffs") (ECF Nos. 2-1, 3-1, 4-1, 6-1, 9-1, 11-1, 12-1, 14-1, 16-1, 18-1, 20-1, 29-1, 40-1, and 67-1) (the *Satterly* Named Plaintiff and Opt-In Plaintiffs collectively hereinafter "Plaintiffs").

The *Satterly* Named Plaintiffs' First Amended Complaint alleges that Airstream maintains a Pay-to-Shift/Wage Theft Policy that generally only pays its employees for their scheduled shift instead of the actual amount of time they are on Airstream's premises clocked in and working, resulting in unpaid overtime wages. The Satterly Lawsuit claims are asserted under both the FLSA and Ohio law on behalf of themselves and similarly-situated hourly, non-exempt employees. (See Satterly Plaintiffs' Complaints, ECF Nos. 1 and 17 (Counts 1-3)). Airstream denies these claims.

### B.  The *Godsey* Lawsuit (Case No. 3:19-cv-107 (hereinafter the "*Godsey* Lawsuit")

On April 11, 2019, Godsey, Wagler, and Jasson Dunaway ("Dunaway") (collectively, the "*Godsey* Plaintiffs") filed their Collective and Class Action Complaint brought under the FLSA

---

[1] Jasson Dunaway also opted into the *Satterly* Lawsuit, but he is a named plaintiff in the Godsey Lawsuit, so he will be referred to as a named plaintiff following the background.

and Ohio law and alleged that Airstream failed to fully pay Named Plaintiffs and similarly situated individuals for all overtime wages earned at the rate of one-and-one-half times their respective correct regular rates of pay. The alleged violations purportedly occurred when the *Godsey* Plaintiffs and those similarly situated individuals received remuneration in addition to their base hourly pay, such as attendance and AIRPOOL production bonuses.[2] Airstream denies these claims.

## II.    RELEVANT BACKGROUND AS TO THE SETTLEMENT OF THE AIRSTREAM LITIGATION

The Parties engaged in significant disputes in both the *Satterly* Lawsuit and the *Godsey* Lawsuit. On October 7, 2019, the Court, upon a joint request from the Parties, stayed the *Satterly* and *Godsey* Lawsuits pending mediation. (*Satterly* Lawsuit, ECF No. 112) Thereafter, the Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims, including payroll data for all putative collective and class members. (ECF No. 131-2, Coffman Dec. ¶ 18; ECF No. 131-3, Bryant Dec. ¶ 16) In addition, Plaintiffs' Counsel thoroughly investigated, researched, and assessed the claims in controversy, Airstream's defenses, and the relevant statutes, regulations, and federal jurisprudence. (*Id.*)

On January 17, 2020, the Parties participated in a full-day mediation in person before Chief Magistrate Judge Elizabeth P. Deavers in the U.S. District Court for the Southern District of Ohio, Eastern Division. However, a resolution could not be reached between the Parties. (ECF No. 131-2, Coffman Dec. ¶ 19; ECF No. 131-3, Bryant Dec. ¶ 17) Between February 10, 2020 and March 5, 2020, the Parties devoted significant efforts toward continued settlement communication. On March 16, 2020, the Parties reached a settlement in principle.

---

[2] *See* ECF No. 1, PAGEID # 4-5, ¶ 20, PAGEID # 7-8.

The Parties reached a settlement of the Airstream litigation upon stated terms and conditions, which are set forth in this Settlement Agreement that resolves all claims that were or could have been asserted in the lawsuit. (ECF No. 131-2, Coffman Dec. ¶ 20; ECF No. 131-3, Bryant Dec. ¶ 18). Based on their extensive investigation, Plaintiffs' Counsel is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the class and collective in light of the risk of significant delay, costs and uncertainty associated with litigation, including Airstream's defenses. (*Id*.)

### A.  **The Terms of the Settlement Agreement**

The Settlement Agreement provides substantial relief for Airstream's hourly, non-exempt employees, including the 24 Plaintiffs who have already joined the Litigation. (*See* ECF No. 131-1, Settlement Agreement).

The Settlement Agreement provides that Airstream, without conceding the validity of Plaintiffs' claims and without admitting liability, will create a total settlement fund of $1,200,000.00 ("Settlement Fund") to resolve the Litigation. (ECF No. 131-2, Coffman Dec. ¶ 22; ECF No. 131-3, Bryant Dec. ¶ 20) The Parties agree that a settlement class should be certified as a Rule 23 class, as defined as follows:

> All current and former hourly, non-exempt associates of Airstream who: (1) worked at least forty (40) hours in any workweek; and (2) "clock in" or "clock out" to keep track of their compensable hours worked, during any workweek from February 1, 2016 until January 1, 2020. (the "Settlement Class")

The Settlement Fund will provide Settlement Class members with their pro rata share of damages resulting from Plaintiffs' claims made in the Litigation, including unpaid pre-shift and post-shift work as well as the failure to pay overtime at the correct rate of pay when additional remuneration is earned. The Settlement Fund represents approximately 40% of the maximum unliquidated overtime damages calculated by Class Counsel. Defendant disputes the maximum

alleged overtime damages calculated by Class Counsel and instead believes that the total settlement fund exceeds the maximum recoverable damages in the Litigation. Although 12 of the settlement payments will be less than $5 due to the pro rata share (based on the number of alleged unpaid overtime hours worked and length of employment), the remaining 1,038 settlement payments exceed this amount with the highest payment in excess of $4,300. (ECF No. 131-1; ECF No. 131-2, Coffman Dec. ¶ 23; and ECF No. 131-3, Bryant Dec. ¶ 21)

In addition, the Settlement Agreement provides for modest collective and class representative enhancement payments to the Named Plaintiffs and Opt-In Plaintiff Jason Myers (collectively, "Representative Plaintiffs") for their efforts assisting Plaintiffs' counsel with the litigation (hereinafter "Service Enhancement Payments"). Specifically, the Representative Plaintiffs will receive Service Enhancement Payments in the corresponding amounts: (1) Matthew Godsey: $15,000; (2) Mark Satterly: $12,500; (3) Jasson Dunaway: $10,000; (4) Josh Wagler: $10,000; and (5) Opt-In Plaintiff Myers: $2,500. Each of these individuals have assisted in the prosecution of the Airstream Overtime Litigation by doing one or more of the following: (1) providing extensive factual information to Plaintiffs' counsel; (2) faithfully communicating with Plaintiffs' counsel; (3) subjecting themselves to the responsibilities of serving as Representative Plaintiffs; (4) responding to written discovery; (5) testifying at hearings; (6) attending the mediation; (7) providing sworn statements; and/or (8) otherwise providing material information to Plaintiffs' counsel above and beyond normal course. (ECF No. 131-1; ECF No. 131-2, Coffman Dec. ¶ 23-27; and ECF No. 131-3, Bryant Dec. ¶ 22-23).

In exchange for the payments, Plaintiffs will release the wage and hour claims asserted in the Airstream Overtime Litigation and the Plaintiffs will be mailed their proportionate share of the Settlement Fund by the Claims Administrator. (ECF No. 131-1, ¶ 36-37) The Settlement Class

members who do not opt out of the Settlement will release Airstream from all federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action of every nature and description, including but not limited to those claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses alleged in the Litigation, whether known or unknown, pursuant to the FLSA, the Ohio Minimum Fair Wage Standards Act O.R.C. 4111.03-4111.08; and the Ohio Prompt Pay Act, O.R.C. 4113.15 ("Ohio Wage Claims") for the Released Period. (*Id.* at ¶ 7 and 36-37) Further, any settlement class member who does not opt out of the Settlement will be deemed to have affirmatively opted into the lawsuit under the FLSA, 29 U.S.C. § 216(b). (Ex. A, Settlement Agreement, ¶ 36-37). The Settlement Class members who do not opt out of the settlement will be issued individual settlement payments by the Claims Administrator in the form of a "Settlement Check." (*Id.*).

### B. Relevant Procedure Background Following Preliminary Approval

On June 15, 2020, this Court preliminarily approved the proposed Rule 23 and 216(b) settlement in this matter. (*See* ECF No. 132) In doing so, the Court (1) Preliminarily approved of and incorporated by reference all definitions set forth in the Class Action Settlement and Release Agreement ("Settlement Agreement") as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e); (2) Granted certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class consisting of the Class Members, as defined in the terms and conditions of the Settlement Agreement (ECF No. 131-1), who worked at Airstream's facility in Jackson Center, Ohio as hourly, non-exempt employees who performed at least 40 hours of work in any workweek at any time between February 1, 2016 and the date the Court finally approves of the Settlement and who did not opt out of the Class Action; (3) appointed Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as class counsel pursuant to Fed. R. Civ.

P. 23(g); (4) appointed Mark Satterly, Matthew Godsey, Josh Wagler, and Jasson Dunaway as Class Representatives; (5) appointed Analytics Consulting, LLC ("Analytics") as the Settlement Administrator; and (6) approved of the settlement procedure and timeline as set forth in the Court's Preliminary Approval Order, dated June 15, 2020 (ECF No. 132).

As indicated in the Parties' Joint Motion for Final Approval, only one potential class member opted out of the settlement by requesting exclusion. (ECF No. 133, PAGEID # 3266) Counsel worked with Analytics to ensure notice of the settlement was successful. (*Id.*)

Through these efforts, the Parties achieved a successful Rule 23 and 216(b) settlement, which provided the 1,025 additional[3] participating Class Members individual settlement awards based on the settlement allocation formula described in the Motion for Preliminary Approval and the Settlement Agreement. Therefore, as more fully explained below, I find that the parties' settlement is fair and reasonable in all respects.

## III. ANALYSIS

### A. The Factors Support Approval of the Settlement

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd*., 2013 WL 2295880 (S.D. Ohio May 24, 2013) (*citing UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

(1) the risk of fraud or collusion;
(2) the complexity, expense, and likely duration of the litigation;
(3) the amount of discovery engaged in by the parties;
(4) the likelihood of success on the merits;
(5) the opinions of class counsel and class representatives;
(6) the reaction of absent class members; and

---

[3] There were 24 initial individuals who joined this action. The total number of Class Members included in the Settlement Agreement is 1,049 out of 1,050 (because one individual opted-out).

(7) the public interest.

*Id.* (*citing UAW*, 497 F.3d at 631); *See also Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011)). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright*, 2018 WL 3966253 at *3 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992.)). As set forth below, the settlement meets the standard for final settlement approval as to each factor and should be approved by the Court.

### 1.  The Notice Process

The Court will consider the notice process used in this case. Since June 15, 2020, the date on which this Court granted the Joint Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Settlement Class ("Preliminary Approval Motion") in its Order (ECF No. 132), Analytics, implemented the notice plan as outlined below.

On or about June 15, 2020, Plaintiffs' counsel provided two spreadsheets containing the class member data, including the updated contact information of 1,050 class members, their employee ID numbers, and the settlement payment amounts. (*See* ECF No. 133-1, Declaration Jeffrey J. Mitchell, Project Manager for Analytics Consulting, LLC, ¶ 1-6) Analytics subsequently processed the records through the US Postal Service's NCOA database to standardize and update the mailing addresses. (*Id.*, ¶ 7)

On July 9, 2020, Analytics sent the Settlement Notices via First-Class United States Mail to the Class Members, consisting of a total of 1,050 Class Members, pursuant to the settlement procedure and timeline approved by the Court.[4] During the 45-day Notice Period, Analytics

---

[4] ECF No. 132, at PAGEID # 3262 ("Distribution of the Notice of Collective and Class Action Lawsuit Settlement (Exhibit 4 to the Settlement Agreement) 24 days after entry of this Order.")

received 18 notices that were returned as undeliverable, and it searched for new addresses and re-mailed 11 of the notices to the updated addresses. (*Id.*, ¶ 9) Further, Analytics forwarded 14 notices that had a forwarding address provide by the Post Office. (*Id.*)

Pursuant to the Court-approved notice plan, the Class Members had 45 days from the date of mailing to review the terms of the Notice of Collective and Class Action Lawsuit Settlement and submit a request to be excluded or object. (*See* ECF No. 132, PAGEID # 3262) Analytics set up a case-specific toll-free number and email address for inquiries to provide information to Class Members. (*See* ECF No. 133-1, Declaration Jeffrey J. Mitchell, Project Manager for Analytics Consulting, LLC, ¶ 10-12) As of the deadline of August 24, 2020 to request exclusion, Analytics received one request. (*Id.*)[5] In addition, the deadline to object to the settlement was also on August 24, 2020 and Analytics did not receive a single objection. (*Id.*)

The Court finds that this notice process provided Class Members with an appropriate notice under Rule 23 and met the FLSA's remedial goals. According to Analytics, 1,043 of the 1,050 Class Members, or 99.3%, received the notice. The Court finds that this is an excellent result and reflects well on the notice process used in this case. Moreover, the claims rate in this case is also excellent given 99.9% of the Class Members will be included in the Settlement.

**2. The Absence of Fraud or Collusion Supports Approval.**

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992.)). The evidence before the Court clearly reflects that the Settlement Agreement is in the product of arms-length negotiations conducted by experienced counsel on both sides. As noted in

---

[5] A copy of the exclusion request is located at ECF No. 133-2.

the Preliminary Approval Motion, the parties reached a settlement after an extensive review and computation of damages, substantial discovery exchanged between the parties, a full day of mediation before Magistrate Judge Elizabeth P. Deavers, and a month of continued settlement negotiations between February 10, 2020 and on March 5, 2020.[6] The record also reflects that the Airstream Overtime Litigation was hotly contested in all respects, particularly given over 130 pleadings were filed in both lawsuits. As such, nothing before the Court suggests that the Settlement Agreement is the result of fraud or collusion.

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval.

From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at \*3 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *Wright*, 2018 WL 3966253, \*3; *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001). This case was no exception.

The Airstream Overtime Litigation involved complex issues of fact and these factors weigh in favor of the settlement. *Wright*, 2018 WL 3966253 at \*3-4. *See also Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at \*3-4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

### 4. The Amount of Discovery Engaged in by the Parties.

To confirm that the Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount

---

[6] *See* ECF No. 131, at PAGEID # 3156-59.

of discovery engaged in by the parties. *Wright*, 2018 WL 3966253 at *4 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.)). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Id.*, 2018 WL 3966253 at *4 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id; Mitchell*, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *See Dillow v. Home Care Network, Inc.*, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

In this case, the Court finds that the Parties engaged in substantial investigation. (ECF No. 131, PAGEID # 3168). The Parties exchanged written discovery and relevant information, including detailed payroll information and other business records of Airstream. (*Id.*) In addition, Class Counsel engaged in further independent investigation of the facts, reviewed pay data, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits. (ECF No. 131, PAGEID # 3168). Thus, the legal issues were thoroughly researched by the Parties and the value of the claims were properly assessed. As a result, the Court finds that this exchange of information exceeds the level required to inform settlement negotiations by experienced counsel. *Wright*, 2018 WL 3966253 at *4; *See Mitchell*, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and*

*recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

> **5. The Likelihood of Success on the Merits, as well as the Risks of Litigation and Uncertainty of Recovery, Favor Approval because there Exists a Bona Fide Dispute over Success on the Merits.**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Wright*, 2018 WL 3966253 at *4 (quoting *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). *See Mitchell*, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

The Court observes that Counsel for both sides believe in the merits of their respective positions and have vigorously represented their clients' interests throughout the Litigation, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. (*Id*.) For example, the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor. *See Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (citing *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA).

Absent settlement, the Parties would have engaged in significant discovery, including, but not limited to responses to discovery requests of many, if not all of the Opt-In Plaintiffs, many depositions, discovery-related motion practice, further testimony at any additional hearings, and other motion practice (Rule 23 class certification, FLSA collective decertification, dispositive motions on the merits and damages issues). (ECF No. 131, at PAGEID # 3169). Further, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that Airstream acted in good faith and Representative Plaintiffs fail to establish a willful violation of the law. (*Id.*) Moreover, an appeal could be filed on one or more issues. (*Id.*)

On the other hand, Defendant faces the prospect of class-wide liability to 1,050 current and former employees, as well as liquidated damages and attorney's fees following lengthy and expensive litigation. (*Id.*) By agreeing to the settlement, these risks are eliminated, and participating class members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). *Barnes*, 2019 WL 1614822, at *3; *See also Hall v. U.S. Cargo and Courier Service, LLC*, 2019 WL 6001198 at *4 (S.D. Ohio Nov. 14, 2019) (Sargus, J) (denying defendant's request for costs following a jury trial in a FLSA collective action).

Therefore, the Court finds that these considerations all weigh in favor of the reasonableness of the settlement.

### 6. The Opinions of Class Counsel and Representative Plaintiffs Favor Approval

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *Wright*, 2018 WL 3966253 at *4-5; *Mitchell*, 2019 WL 696941, at *5 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019)

13

(Watson, J.). *See, e.g., Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, *7 (S.D. Ohio May 30, 2012) 2012 WL 1945144, at *7 ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Plaintiffs approve of the Settlement Agreement. (ECF No. 131, at PAGEID # 3170; *see also* ECF No. 131-2, Declaration of Matthew J.P. Coffman, at PAGEID # 3230-31; ECF No. 131-3, Declaration of Daniel I. Bryant, at PAGEID # 3254-58). In addition, Class Counsel is of the opinion that the Settlement is a fair, reasonable, and adequate resolution of this Litigation. (*Id.*) Class Counsel is experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement. (*Id.*) This Court agrees. The Court is familiar with the work of Mr. Coffman and Mr. Bryant and finds that they are both well-versed with wage and hour claims, including class and collective actions. For the reasons set forth above as well as in their declarations already submitted before the Court, the Court finds that this factor weighs in favor of the reasonableness of the Settlement.

### 7. The Reaction of Class Members.

The Court must also consider the reaction of the absent class members. *Wright*, 2018 WL 3966253 at *5 (internal citations omitted). As indicated above, the Class' reaction strongly supports approval. Out of 1,050 Class Members, only one potential class member requested exclusion from the settlement, and no Class Member otherwise objected to the settlement. As noted above, the inclusion rate of 99.9% is excellent. This is buttressed by the excellent notice process

used in this case, which ensured that the class members had an opportunity to consider whether to participate in the settlement.

### 8. The Public Interest.

The public interest favors the settlement of class action litigation. *Wright*, 2018 WL 3966253 at *5; *Mitchell*, 2019 WL 696941, at *5-6 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *Kritzer*, 2012 WL 1945144 at *8; *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007). The Airstream Overtime Litigation is no exception. The settlement provides relief to the class members, avoids further litigation in a complex set of cases, and frees the Court of judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the proposed Settlement.

### 9. Overall Settlement Terms

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Kritzer*, 2012 WL 1945144 at *8 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate. *Id*. (internal citations omitted.).

In the present case, this settlement establishes a pool of Settlement funds that will be divided among the Settlement Class members on a pro rata basis based upon their calculated damages. (ECF No. 131, at PAGEID # 3171. *See also* ECF No. 131-2, Declaration of Matthew J.P. Coffman, at PAGEID # 3230-31; ECF No. 131-3, Declaration of Daniel I. Bryant, at PAGEID # 3254-58). This ensures an equitable distribution of settlement proceeds that is directly tied to the

claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds. (*Id.*)

### (a) The Individual Payments are Reasonable and Adequate.

With respect to the settlement payments to the Settlement Class members, the Court finds that the individual payments are reasonable. The total Settlement Fund represents approximately 40% of the maximum unliquidated overtime damages calculated by Class Counsel. (ECF No. 131-2, Declaration of Matthew J.P. Coffman, at PAGEID # 3230-31; ECF No. 131-3, Declaration of Daniel I. Bryant, at PAGEID # 3254-58) Defendant disputes the maximum alleged overtime damages calculated by Class Counsel and instead believes that the total settlement fund exceeds the maximum recoverable damages in Litigation. (*Id.*) Although 12 of the settlement payments will be less than $5, the remaining 1,038 settlement payments exceed this amount with the highest payment in excess of $4,300. (*Id.*) The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the settlement class members' overtime claims. (*Id.*)

### (b) Representative Plaintiffs' Service Awards are Reasonable

The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4-5 (N.D. Ohio May 4, 2018).; *Wright*, 2018 WL 3966253 at *7. Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Wright*, 2018 WL 3966253 at *7 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7

(N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted)). Service awards to representative plaintiffs "are common in class action settlement and routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 WL 1945144 at *8.

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374, *citing*, *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985), *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)(among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members"). Such awards are common in class action settlement and routinely approved for the simple reason: "to compensate [plaintiffs] for the services they provided and the risks they incurred during the course of the class action litigation." *Kritzer*, 2012 WL 1945144 at *8-9 (S.D. Ohio May 30, 2012).

In the present case, the Court finds that Representative Plaintiffs' roles in the Airstream Overtime Litigation were necessary and the requested payment amounts are reflective of their respective contributions. (ECF No. 131, at PAGEID # 3173) They attached their names to publicly filed lawsuits against an employer that dominates where they live, which justifies their service awards. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 (citing *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case

because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").

For their individual efforts, Plaintiffs requested service payments as follows: (1) Matthew Godsey: $15,000; (2) Mark Satterly: $12,500; (3) Jasson Dunaway: $10,000; (4) Josh Wagler: $10,000; and (5) Jason Myers: $2,500. The Court finds that the service payments are reasonable and approves the amounts sought, particularly given their efforts as well as the fact that the proposed service payments set forth in the agreement are within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *8 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); and *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff).

Therefore, given all of the factors weigh in favor of approval, the Court **GRANTS** the Parties' Joint Motion for Final Approval.

### B. PLAINTIFFS' ATTORNEY FEES AND REIMBURSEMENT OF COSTS ARE REASONABLE AND APPROPRIATE FOR FINAL APPROVAL

### A. Class Counsel is entitled to their requested fee.

As this Court declared, "when awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Wright*, 2018 WL 3966253 at *6 (quoting *Rawlings v. Prudential-Bache Props., Inc.*,

9 F.3d 513, 516 (6th Cir. 1993); *Mitchell*, 2019 WL 696941, at *6 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.). *See also Connectivity Sys. Inc. v. Nat'l City Bank,* Case No. 2:08-cv-1119, 2011 WL 292008, at *13, 2011 U.S. Dist. LEXIS 7829, at *34 (S.D. Ohio Jan. 26, 2011) (citation omitted) (Watson, J.) ("absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved.") (internal citations omitted). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h).

Class Counsel asks the Court to approve an attorney's fees award of one-third of the settlement fund, i.e. $400,000. (ECF No. 133, PAGEID # 3286) Defendant does not object to the requested fee award. The Court notes that Plaintiffs' successful pursuit of this action supports the requested fee award. *Wright*, 2018 WL 3966253 at *6 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *Wright*, 2018 WL 3966253 at *6 (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio Dec. 31, 2007)). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach. *Id.* Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Id*. (citing *Rawlings*, 9 F.3d at 516). Second, the Court must

consider six factors to assess the reasonableness of the fee. *Id.* (citing *Moulton v. U.S. SteelCorp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

### 1. The Court Adopts the "Percentage of the Fund" approach.

The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *see also Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947 *5 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases).

Federal jurisprudence within the Sixth Circuit, including this Court, hold that 1/3 of the settlement fund is a "normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (approving as reasonable 1/3 for attorney's fees from a common fund of $1,140,000); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (observing collective cases that attorney fee awards "typically range from 20 to 50 percent of the common fund"); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6 (citations omitted) ("one-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"). *See also Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving as reasonable 1/3 of the common fund of $525,000 for attorney fees); *Walton, et al. v. Oldcastle*

*BuildingEnvelope, Inc.*, No. 3:18-cv-2936, ECF No. 44 (N.D. Ohio Mar. 2, 2020) (Carr, J.) (approving as reasonable 1/3 of a total common fund of $775,000 for attorney fees).

Here, Class Counsel requests an award of one-third of the settlement fund as a fee award. This is a normal fee amount in common fund settlement in wage and hour cases. The Court will not deviate from the norm here. The Court finds that Class Counsel's request for a one-third fee is approved.

### 2. The *Ramey* factors

In In reviewing the reasonableness of the requested fee award, courts consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Brandenburg*, 2019 WL 6310376, at *5. There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13-cv-341, 2018 WL 3957364, at *1 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fee.

Class Counsel's work resulted in a significant benefit to class members. In this context of the litigation, particularly given the parties' positions as to the merits of their claims and defenses, this is an excellent result. The Settlement provides tangible relief to class members, eliminates the risk and uncertainty that the parties would otherwise face if the litigation were to continue, and

promotes the remedial purpose of the FLSA. The fact that there has been only one request to opt out of the settlement and no objections demonstrates that class members recognize the settlement's substantial benefit as a result of Class Counsel's efforts. *Hainey v. Parrott*, 617 F.Supp.2d 668, 675 (S.D. Ohio 2007) ("a small number of objections, particularly in a class of this size, indicate that the settlement is fair, reasonable and adequate").

Moreover, the Court finds that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2017 WL 2838148, at *8, 2017 U.S. Dist. LEXIS 102621, at *26 (S.D. Ohio June 30, 2017) (citation omitted). Class Counsel's efforts resulted in a substantial monetary benefit for the class members. Many of the class members would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant. *Id.* Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.*(citation omitted).

Furthermore, Class Counsel litigated the consolidated cases on a wholly-contingent basis with no guarantee of recovery. (ECF No. 131-2, Coffman Dec., PAGEID # 3243, ¶ 28; ECF No. 131-3, Bryant Dec., PAGEID 3256, ¶ 26).

Finally, Plaintiffs are represented by experienced counsel. All counsel, including Defendant's counsel, are highly qualified and have substantial experience in federal litigation and class action litigation. Class Counsel has substantial experience in wage-and-hour litigation. The Court is familiar with the legal counsel provided by attorneys Matthew Coffman and Daniel Bryant, particularly in wage and hour matters, and this case was no exception.

For these reasons, the Court determines the fees requested are reasonable and **GRANTS** Class Counsel's request for fees for 1/3 of the common fund, or $400,000 in attorney's fees.

**B. Class Counsel are entitled to reimbursement of expenses.**

Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *Brandenburg*, 2019 WL 6310376 at *7. Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.* (internal citations omitted).

Here, Class Counsel requests $14,628.00 in costs/expenses that have been incurred prosecuting the Airstream Overtime Litigation. (ECF No. 131-2, Coffman Dec. ¶ 40-41; and ECF No. 131-3, Bryant Dec. ¶ 38-39).

## IV. <u>CONCLUSION</u>

Based on the foregoing, the Parties' Joint Motion for Final Approval (ECF No. 133) is **GRANTED**. Accordingly, the Court finds as follows:

1.  Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on all of the parties' submissions, the settlement agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class members to the settlement agreement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the class members;

2.   The terms and provisions of the Settlement Agreement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement Agreement will result in substantial savings of time, money and effort to the Court and the parties, and will further the interests of justice;

3.   All class members are bound by this Judgment and by the terms of the Settlement Agreement;

4.   Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action;

5.   The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims on behalf of the class members. Plaintiffs participated in the Action, acted to protect the Class, and assisted their counsel. The efforts of Class Counsel have produced the Settlement Agreement entered into good faith, and which provides a fair, reasonable, adequate, and certain result for the Class. Class Counsel have made application for an award of $400,000 in attorneys' fees and $14,628.00 in expenses incurred in the prosecution of the Action on behalf of themselves and the Class Members. The combined total of the award is $414,628.00, which the Court finds to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $414,628.00 as attorneys' fees and expenses. Further, Plaintiffs are each entitled to a fair, reasonable and justified service awards pursuant to the Settlement Agreement, to be paid by Defendant from

the Settlement Fund;

6.      The parties shall notify the Court once the final settlement payment is made, at which time the Court will dismiss the Action with prejudice, and all Released Claims against each and all Released Persons, and without costs to any of the parties as against the others except as otherwise agreed;

7.      Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto.


Date:  __09-25-2020_____

                                        _Walter H. Rice_____  (tp - per Judge Rice authorization after his review)
                                        WALTER H. RICE
                                        UNITED STATES DISTRICT JUDGE